James C. Coughlin v. Commissioner.
Coughlin v. Commissioner
Docket No. 21417.
United States Tax Court
1950 Tax Ct. Memo LEXIS 88; 9 T.C.M. (CCH) 832; T.C.M. (RIA) 50227; September 28, 1950
*88 Norman A. Eisner, Esq., 1074 Mills Bldg., San Francisco, Calif., for the petitioner. Robert H. Kinderman, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined a deficiency in petitioner's income and victory tax liability for 1943 in the amount of $7,357.90, and a deficiency in petitioner's income tax liability for 1944 in the amount of $3,069.14. The issue in this proceeding is whether petitioner is taxable on three-sevenths, or on four-sevenths of the net income for 1943 of a partnership known as the Red Line Transfer Company. Petitioner contends that one-seventh of the income of the Red Line Transfer Company is properly taxable to a trust of which his son, Warren, was the sole beneficiary rather than to himself. The respondent has determined that petitioner is taxable on four-sevenths of partnership income, which includes the one-seventh which the petitioner contends is taxable to the trust. Other adjustments in income made by respondent are not contested by petitioner. Petitioner filed his returns for 1943 and 1944 with the collector for the first district of California. The record in this *89 proceeding consists of testimony and various exhibits from which we make the following Findings of Fact Petitioner has been engaged in the trucking business in California since approximately 1910. On April 1, 1943, he was the manager of seven different trucking companies, which together owned and operated more than 400 trucks and trailers in California. Petitioner was the sole owner of five of these companies. He owned an interest greater than 50 per cent in the sixth, and he owned a four-sevenths interest in the seventh on April 1, 1943. This seventh company was the Red Line Transfer Company of San Francisco, hereinafter referred to as "Red Line." Red Line was engaged in the business of delivering parcels from and to the San Francisco terminal of the California Motor Transport Company, a state-wide highway carrier which was wholly owned by petitioner.Red Line was operated under an oral agreement of partnership. Petitioner owned a four-sevenths interest in the company, and a one-seventh interest was owned by each of his brothers, William and Joseph, and by his sister, Rose. William, Joseph, and Rose have never been active in the business, which was personally operated and managed *90 by petitioner. On March 31, 1943, petitioner and the other partners in Red Line decided to distribute the profits of Red Line which had accumulated and drawing accounts were opened in the names of petitioner, William, Joseph, and Rose. Accounts payable were also set up on the books in the names of each of the partners. Petitioner's account payable was credited with $71,428.55, and each of the other three partners was credited with $17,857.15. The capital account of petitioner on March 31, 1943, had a credit balance of $1,948.04, and that of each of the other partners contained a credit balance of $487.01. Petitioner has one son, Warren James Coughlin. On April 1, 1943, Warren was seventeen years old and was awaiting induction into the United States Air Force. Petitioner decided to make a gift in trust of a one-seventh interest in Red Line to his son. Accordingly, on April 1, 1943, petitioner executed a trust indenture under which he transferred to himself as trustee a one-seventh interest in Red Line. Warren was named as the beneficiary of the trust. The trust indenture provided, inter alia: "1. This trust shall continue until Warren James Coughlin arrives at the age of thirty *91 years, or until the time of death of said Warren James Coughlin, should he die prior to reaching the age of thirty years. When said Warren James Coughlin arrives at the age of thirty years said trust shall terminate and said Warren James Coughlin shall thereupon become entitled to and shall receive the entire trust estate then remaining and any accumulated income therefrom. In the event of the death of said Warren James Coughlin prior to arriving at the age of thirty years, said trust shall thereupon forthwith terminate and said trust estate and any accumulated income shall go and belong to the surviving issue, if any, of said Warren James Coughlin, and if there be more than one such issue, then to such issue, share and share alike. In the event said Warren James Coughlin die without surviving issue, said trust estate and accumulated income, if any, shall go and belong to the heirs at law of said Warren James Coughlin, according to the laws of succession of the State of California. "2. In the event of the death of James C. Coughlin during the lifetime of Warren James Coughlin, and prior to the time that the latter arrives at the age of thirty years, this trust shall forthwith terminate *92 and said trust estate and any accumulated income shall go and belong to said Warren James Coughlin. "3. Said trustee may at his discretion retain, hold and operate the said interest in said Red Line Transfer Co., and for that purpose may in the capacity of trustee, and at the risk of the trust estate and not at the risk of the transfer, enter into and carry on any partnership, general or limited, for the conduct of said business, or convey said interest in said business to any corporation that may be formed for acquisition and operation thereof. Said trustee may at his discretion sell, convey, lease, pledge, mortgage, deed in trust, purchase, invest, reinvest, loan and reloan the whole or any part of the trust estate and in any property and of any character that he may deem advisable, and whether or not same be permissible by law for investment of trust funds. Said trustee may invest and reinvest said trust estate, or any part thereof, in any business enterprise and at his discretion operate or permit the same to be operated for and on behalf of said trust estate and either independently or in conjunction with separately owned interest therein. Said trustee may generally handle, *93 manage, operate and dispose of the whole or any part of the trust estate in such securities, properties or manner, and upon such terms and conditions as the trustor might or could do individually or which said trustee may deem advisable. All and everything done by said trustee pursuant to the terms of this trust shall be at the risk of the trust estate and not at the risk of the trustee, and the trustee shall be held harmless against any loss and expense in connection therewith. * * *
"5. * * * The trustee shall not be entitled to any compensation for services as trustee, but shall be privileged to receive compensation for services rendered to any partnership or corporation that may conduct any business in which said trust estate has an interest. * * *
"7. The beneficiary under this trust is hereby restrained from and shall be without right, power or authority to sell, transfer, pledge, mortgage, hypothecate, alienate, anticipate or in any manner affect or impair the beneficial right, title, interest, claim and estate in and to the income and/or principal of this trust during the entire term thereof; nor shall the right, title, interest or estate of said beneficiary be *94 subject to rights or claims of creditors of said beneficiary; nor subject nor liable to any process of law or court; and all of the income and/or principal under this trust shall be transferable, payable and deliverable only solely, exclusively and personally to said beneficiary or beneficiaries at the time they become entitled to take the same under the terms of this trust, and the personal receipt of a beneficiary shall be a condition precedent to the payment or delivery to such beneficiary of any part of said trust estate. "8. The net income of the trust estate shall be accumulated by the trustee for the said beneficiary until he arrives at the age of twenty-one (21) years, and at which time he shall be entitled to the accumulated income, and from and after which time he shall be entitled to the net income which shall be determined and be payable at the expiration of each year. From and after the time that the said beneficiary arrives at the age of twenty-one (21) years, the trustee may in his discretion pay to the beneficiary such part of the principal of the trust estate as may in his discretion be reasonably necessary because of sickness, want or other necessity arising or *95 existing after said beneficiary shall have attained said age of twenty-one (21) years. * * *
"10. The trustee is hereby vested with full discretion and power to determine what shall constitute income and what corpus and what gross income and what net income. If a business be operated in whole or in part on behalf of said trust, the trustee shall, in his discretion, determine what portion of the net earnings or profits thereof shall be retained and be invested in the business and only so much of the net earnings or profits as said trustee shall deem available for distribution shall constitute net income to be accumulated for the beneficiary until he arrives at the age of twenty-one (21) years and thereafter to be paid to him." No objection was made by any of the other partners to the transfer which was made by petitioner to the trust. However, no written partnership agreement was entered into among the parties. On the books of Red Line, petitioner's capital account was reduced by $487.01, which was one-seventh of the total capital of Red Line, and a new capital account in the name of Warren, rather than in the name of the trust, was set up on the books in the amount of $487.01. *96 Warrent contracted an ear infection in 1943 which prevented his induction into the Air Force. In May, 1943, Warren enrolled as a student in a junior college in San Francisco, and he attended the college until the middle of 1944 at which time he joined the Merchant Marine. Warren worked in various departments of Red Line and the other companies owned by petitioner on afternoons and during week-ends from June, 1943, until such time as he joined the Merchant Marine. He was adequately compensated for such duties as he performed. Red Line has made no distribution of profits since March 31, 1943. All of the company's income has been accumulated and kept in the business. At the end of each year, each partner's capital account has been credited with his pro rata share of the year's operating profits. The capital account opened in Warren's name was credited with $4,855.36 at the end of 1943 and with $5,303.16 at the end of 1944. Actual distribution of these amounts either to Warren or to the trust set up for his benefit has not been made. No change was made in the operation of Red Line after the trust was set up. Petitioner continued personally to operate and manage the business. During *97 1943 and until such time as Warren joined the Merchant Marine in 1944, petitioner paid for the maintenance and education of his son. Petitioner and his brothers and sister did not in good faith and acting with a business purpose intend to join together with the trust set up for the benefit of Warren as partners in the conduct of Red Line during 1943 and 1944. Opinion The issue in this proceeding is whether petitioner is taxable on the income from the one-seventh interest in Red Line which constituted the corpus of a trust which he set up for the benefit of his son. Petitioner contends that the trust was a bona fide partner in Red Line and that the income is not imputable to him. However, upon consideration of all the facts and circumstances which show the intent of the parties, we have found as a fact that petitioner and his brothers and sister did not in good faith and acting with a business purpose intend to join together with the trust as partners in the conduct of Red Line. The facts upon which this ultimate finding of fact is based do not differ materially from those present in a number of other cases in which it was held that a trust was not a bona fide partner in a business *98 enterprise and that the parties did not intend that it should so be. E.g., (4th Cir., July 26, 1950); ; ; ; cf. ; aff'd., ; ; aff'd., . There was no real change effected in the economic situation of petitioner or in the control or management of Red Line by the creation of the trust. Whatever capital was donated by petitioner to the trust was in the business before the trust was created, and it remained there. The conduct of the business remained unchanged. Petitioner continued to personally operate and control Red Line as he had done before the trust was set up. Petitioner performed no services for Red Line as trustee which were different from those which he had always performed, and continued to perform, in his individual capacity as a partner. Petitioner was both the settlor of the trust and the *99 named trustee. As trustee, petitioner retained broad powers to control the management and investment of the trust corpus as he should see fit. The trust income was to be accumulated during the minority of the beneficiary, and during 1943 and 1944 Warren was 17 and 18 years of age, respectively. Under the trust indenture, petitioner as trustee had the sole discretion as to what should constitute the net earnings of Red Line and whether or not any part of those earnings should be distributed to the trust. No distribution of Red Line's profits, however, was ever made to the trust, and the earnings credited in Red Line's books remained in the business. The facts in this proceeding cannot be differentiated from those present in the cases cited supra, and on the authority of those cases it is held the income from the one-seventh interest in Red Line which petitioner donated to the trust is properly includible in petitioner's income. Decision will be entered for the respondent.